266 So.2d 400 (1972)
Estelle BRUST, Appellant,
v.
Bernard BRUST, Appellee.
No. P-231.
District Court of Appeal of Florida, First District.
July 6, 1972.
Albert J. Datz, of Datz, Jacobson & Dusek, Jacksonville, for appellant.
Tyrie A. Boyer, of Dawson, Galant, Maddox, Boyer, Sulik & Nichols, Jacksonville, for appellee.
RAWLS, Judge.
This is primarily a child custody case. Appellant-wife contends that the trial court abused its discretion in awarding the custody *401 of three boys, ages 6, 8 and 10, to appellee-husband.
The trial judge after hearing extensive testimony on the custody question, concluded that the best interests of these three boys would be served by awarding their custody to the father. Succinctly, evidence in support of this finding is: Appellee is a loving father and spends a great deal of time with his boys; the father oftentimes bathes, dresses and feeds the boys and puts them to bed; the oldest boy, who felt each of his parents loved him equally, expressed the view that he would have a better life with the father; appellant-mother found her children "very very difficult to cope with," and had to a great extent left the care of the children to the father; and the mother had had several hysterical emotional encounters with the boys when she attempted to handle the day-to-day problems of child raising. In its final judgment, the trial court found, inter alia:
"... The three boys are now 10, 8, and 6 years old. All are in school. The defendant, their father, has displayed a greater degree of interest in the rearing of his sons than fathers generally do, and has participated personally in their physical care to a greater extent than fathers are wont to participate, manifestly enjoying the function of being a father. He has a knack for combining love for his children with a proper degree of necessary discipline. Both the mother and the father work outside the home for pay. The father has developed a concrete and workable plan for the supervision and care of the children during the several hours each school day after school lets out before he arrives home to take care of them himself. The children are no longer so young as to give the mother an edge. While the plaintiff is not by any means an unfit mother, but to the contrary is a fit mother, the three boys will fare better in the custody of their father than in the custody of their mother. Therefore, applying the primary criterion applicable on an initial award of custody, the court finds that the welfare of the children will be best served by awarding their custody to their father."
Appellant-wife in her brief states: "The trial judge has broken with precedent by awarding custody of children of tender years to their father, apparently to meet his view of changing social trends". Her primary contention is that it is the settled case law of this State that when both parents are morally and physically fit, the welfare of minor children of tender years is best served by awarding their custody to the mother. Appellant then argues that since the trial judge specifically found that the wife is a fit mother, he was required as a matter of law to award custody of the three boys to her. In support of this position, appellant reviews numerous Florida decisions beginning with Green v. Green,[1] which states:
"Nature has prepared a mother to bear and rear her young and to perform many services for them and to give them many attentions for which the father is not equipped."
Fields v. Fields[2] is next cited for the following principle of law:
"Other things being equal, ... the mother of infants of tender years is best fitted to bestow the motherly affection, care, companionship, and early training suited to their needs."
*402 The case cited by appellant which is closest in point is Julian v. Julian[3] wherein the appellate court reversed an award of custody to the father of a 13-year-old boy and 9-year-old girl and directed that custody be granted to the mother. Our sister court extensively reviewed the testimony adduced before a Special Master, observing that at best only a slight presumption existed in favor of the custody provisions since the Chancellor did not hear the witnesses. The evidence reviewed by the appellate court in Julian was, of course, peculiar to the parties involved and materially varied from that here considered.
To bolster her legal contentions, appellant extensively briefs "nonlegal authorities." These extensive sociological discourses dwell at length upon the need of a mother's love by children, and especially boys. One of the treatises entitled, "Studies in the Psychology of Sex,"[4] is cited for the following statement:
"Nature accords the male but a secondary and comparatively humble place in the home, the breeding place of the race; he may compensate himself if he will, by seeking adventure or renown in the world outside. The mother is the child's supreme parent."
Unlike the Federal Supreme Court's dilemma in Brown v. Board of Education,[5] it is not necessary for this Court to resort to sociological dissertations in construing the jurisprudence of this State.
The Supreme Court in Green, supra, enunciated the controlling principle of law applicable in child custody cases, viz.:
"We are committed to the doctrine that the welfare of the child is the principal feature in determining custody, and that a very large discretion is allowed the chancellor in this respect."
This is the primary question that confronts each Chancellor when he is called upon to make the grave decision as to custody of children. At common law the father was vested as a matter of right with the custody of his minor children. As reflected by the foregoing authorities the Florida Supreme Court for a long period of time placed great emphasis upon the mother in reviewing custody cases, and apparently espoused the view that unless the mother was shown to be unfit she should be granted custody. Thus, the pendulum of custody has swung from father to mother and has finally centered upon the principal question of the welfare of the child.
The contention as stated in Grant v. Corbitt[6] is most applicable here:
"... the opportunity of the Chancellor to observe the demeanor and personalities of the parties and their witnesses and to feel forces, powers and influences that cannot be discerned by merely reading the record, assumes a new importance because of the many intangibles that must be evaluated in deciding the delicate question of child custody."
We agree with appellant that the "other things being equal" doctrine mandates an award of the custody of children of tender years to the mother. However, the trial judge in the instant case, unlike in Julian, supra, observed and listened to each witness and party in the lengthy trial of this marital controversy. His discretion in the matter is broad. Further, as the trial judge so correctly observed, "The children are no longer so young as to give the mother an edge." And lastly, the extensive record in this case amply supports the trial judge's conclusion that the welfare of the children will be best served by awarding their custody to the father. The award of custody to the father is affirmed.
Appellant-wife also contends that the failure of the trial court to award permanent *403 alimony is erroneous. The record reflects that the wife is employed, well-educated and prepared to earn her living.[7] The trial judge did not err in failing to award alimony.
Lastly, the wife challenges the failure of the trial judge to award her attorney's fees and costs. This contention is meritorious. A review of this record pertaining to material matters leads us to the conclusion that the wife was entitled to an award of her attorney's fees and costs. There is no dispute that the sum of $3,000.00 is a reasonable sum to be awarded for her attorney's efforts in the trial court; and the sum of $750.00 is allowed for his services in prosecuting this appeal. Costs are assessed against the husband.
The judgment appealed is affirmed in part and reversed in part.
CARROLL, DONALD, K., Acting C.J., and WIGGINTON, J., concur.
NOTES
[1] Green v. Green, 137 Fla. 359, 188 So. 355, 356 (1939), concerned a child 5 years of age.
[2] Fields v. Fields, 143 Fla. 886, 197 So. 530 (1940), involved three children of ages 3, 5 and 7. Also see Jones v. Jones, 156 Fla. 524, 23 So.2d 623 (1945), which involved boy and girl, ages 6 and 4; Stewart v. Stewart, 156 Fla. 815, 24 So.2d 529 (1946), a 2-year-old girl; Hurst v. Hurst, 158 Fla. 43, 27 So.2d 749 (1946), a 3-year-old child; Dobbs v. Kelly, 39 So.2d 479 (Fla. 1949), a 4-year-old boy; and Teel v. Sapp, 53 So.2d 635 (Fla. 1951), a 2-year-old girl.
[3] Julian v. Julian, 188 So.2d 896 (2 Fla. App. 1966).
[4] Havelock Ellis, Studies in the Psychology of Sex, p. 3 (New York: Random House, 1936).
[5] Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).
[6] Grant v. Corbitt, 95 So.2d 25, 28 (Fla. 1957).
[7] The wife is a college graduate, has a BA in Statistics, and is now employed by an insurance company.